**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| KIER WEST, | * | |
| Plaintiff, | * | |
| v. | * | Civ. No. 8:25-cv-1638-PX |
| GPI MD-K LLC, | * | |
| Defendant. | * | |

***

## MEMORANDUM OPINION

Self-represented Plaintiff, Kier West, filed suit against his former employer GPI MD-K, LLC d/b/a Kia of Bowie ("GPI"), for alleged discrimination arising from his fifteen-day employment as a sales associate. The parties have cross-moved for summary judgment. ECF Nos. 31, 33, 36. The issues are fully briefed, and the Court finds no hearing necessary. *See* D. Md. Loc. R. 105.6. For the reasons stated below, GPI's motion is GRANTED and West's motion is DENIED.

## I. Background

West worked for GPI at its Kia car dealership from January 1 through January 15, 2025. ECF No. 31-2 ¶¶ 3, 9. GPI compensated West under a written "Pay Plan" applicable to all sales associates. *Id.* ¶ 5; *see also* ECF No. 31-3. As for West's Pay Plan, the terms guaranteed a $3000 monthly wage if he remained employed the entire term; otherwise he would receive a prorated amount for the number of days worked. ECF No. 31-2 ¶ 6. If he worked a full month, GPI would pay him "a draw" comprised of a combination of "estimated commissions" earned from selling cars and the guaranteed salary for the first through the fifteenth of the month. *Id.* ¶ 7; ECF No.

31-3. The draw would be "the highest of" either (1) the associate's "estimated commissions based on all deals posted to accounting"; (2) "the extent to which the minimum wage times all hours worked" during that period "exceeds any payment" already made for the same period; or (3) "one-half of any applicable guarantee." *Id.* Subsequent adjustments, if necessary, would be made in the next pay period following the close of the month. *Id.*

After 15 days on the job, West notified his manager by email that he was leaving the position because recent personnel changes made him feel "ignored and undervalued," but that he would be open to filling a position at another Kia location. ECF No. 31-4. To calculate West's final compensation, GPI divided the month's $3,000 guarantee by 31 days to arrive at a daily pay rate of $96.77, and next multiplied that amount by 15 for the days worked, resulting in total wages owed of $1,451.61. ECF No. 31-2 ¶ 10. West now complains that another employee, Ashley Nance, who started the same day as West and stayed at Kia for 25 days, *id.* ¶ 11, was paid commensurately more, ECF No. 31-7 at 1. West believes that Nance's higher pay reflects GPI's gender-based discrimination. *Id.* at 2.

Following West's departure, a GPI employee erroneously contacted West to ask that he return his company laptop and headset. ECF No. 31-1 at 4. West told the staff person that he was never given any equipment, and that seemed to end the matter. *See* ECF No. 35 at 15–16. Nonetheless, West believes the post-resignation query amounts to unlawful harassment. ECF No. 31-7 at 2.

Based on West's brief involvement with GPI, he sues for an array of statutory and common law causes of action. In Count I, West accuses GPI of contractual breach arising from its "failure to pay wages as agreed," and of violating the Maryland Wage Payment and Collection Law ("MWPCL"), Md. Code Ann., Lab & Empl. § 3-501; Count II alleges "[d]iscrimination and

[u]nequal [p]ay" in violation of the state and federal statutory "equal pay" acts; Count III avers "retaliation[ and] harassment" in violation of Title VII, 42 U.S.C. § 2000d *et seq.*, and Md. Code Ann., State Gov't § 20-606; and in Count IV, West asserts a nonspecific "[o]rganizational [f]ailure" which he says harmed his career. ECF No. 2 at 4–5.

After protracted discovery, the parties submit cross motions for summary judgment.

## II. Analysis

### A. Standard of Review

Summary judgment is appropriate when the Court, viewing the evidence in the light most favorable to the nonmoving party, finds no genuine disputed issue of material fact, entitling the movant to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003) (quoting former Fed. R. Civ. P. 56(e)). "A mere scintilla of proof . . . will not suffice to prevent summary judgment." *Peters v. Jenney*, 327 F.3d 307, 314 (4th Cir. 2003). Importantly, "a court should not grant summary judgment 'unless the entire record shows a right to judgment with such clarity as to leave no room for controversy and establishes affirmatively that the adverse party cannot prevail under any circumstances.'" *Campbell v. Hewitt*, *Coleman & Assocs., Inc.*, 21 F.3d 52, 55 (4th Cir. 1994) (quoting *Phoenix Sav. & Loan, Inc. v. Aetna Casualty & Sur. Co.*, 381 F.2d 245, 249 (4th Cir. 1967)). Where the party bearing the burden of proving a claim or defense "fails to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden of proof at trial," summary judgment against that party is likewise warranted. *Celotex*, 477 U.S. at 322.

West's cross motion is a combined response and a request for judgment in his favor "on liability." ECF No. 33 at 3, 4.[1] In reviewing cross motions, the Court considers each motion separately, construing all evidence in the light most favorable to the nonmovant. *See Sheet Metal Workers' Health & Welfare Fund of N. Carolina v. Stromberg Metal Works, Inc.,* 118 F.4th 621, 631 (4th Cir. 2024). The Court begins with GPI's motion, considering each claim separately.

**B. Count I – Breach of Contract and Wage Theft**

In Count I, West avers that GPI failed "to pay wages as agreed," breaching his employment contract and the MWPCL. ECF No. 2 at 4–5. Taking the contract claims first, West must adduce some evidence that the parties entered a valid and binding contract, and that GPI breached a material term. *See, e.g.*, *Cont'l Masonry Co. v. Verdel Constr. Co.*, 279 Md. 476, 480 (1977). The only conceivable contract would be the Pay Plan which prorates a sales associate's pay based on whether the associate remained employed for the entire month and whether the associate earned any commissions. *See* ECF No. 31-2 ¶¶ 6–7; ECF No. 31-3. The record indisputably reflects that West had been paid for fifteen days' employment, consistent with the prorated daily wage derived from the Pay Plan. *See* ECF No. 31-2 ¶ 10; *see also* ECF No. 35 at 3 (direct deposit record showing

[1] GPI separately moves to "strike" West's filing as untimely. ECF No. 36. GPI correctly points out that West missed the dispositive motions filing deadline by three weeks, and the time to respond to GPIs motion by one week. *Id.* Pursuant to Federal Rule of Civil Procedure 6(b) a Court may extend filing deadlines "for good cause" if a request for extension is made prior to expiration of the original time, or after the time expired "if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b). "Excusable neglect" is an "elastic concept" that is "at bottom an equitable [determination], taking account of all relevant circumstances" concerning the delay. *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 392, 395 (1993). This includes balancing the "prejudice to the [non-movant]" against the "impact on judicial proceedings, the reason for the delay," and "whether the movant acted in good faith." *Thompson v. E.I. DuPont de Nemours & Co., Inc.*, 76 F.3d 530, 533 (4th Cir. 1996) (quoting *Pioneer*, 507 U.S. at 395) (alteration in original). West asks the Court to forgive the delay because he is pro se; he encountered difficulties filing certain evidence under seal; and GPI has not suffered prejudice. ECF No. 38 at 1, 4. Although West's proffer is thin, West represents himself and otherwise appears to have diligently prosecuted his claims. Nor is GPI prejudiced by the modest delay in filing. The motion at ECF No. 36 is denied.

payment for one of two payment installments for West). Thus, when viewing the evidence most favorably to West, GPI abided by the promised terms. Because GPI had not breached a contractual obligation, summary judgment is granted in its favor.

As for the statutory claim, West merely cites to the definitional section of the MWPCL, § 3-501, and does not articulate how GPI violated any aspect of the statute. *See* ECF No. 2 at 2, 4–5. In his response, West seems to suggest that the violation lies in GPI having paid the amount owed to him over two pay periods. *See* ECF No. 33 at 2. But he makes no effort to explain how receiving his wages in bimonthly installments violated the MWPCL. Nor can the Court discern any violation even when giving the record a most charitable read. Thus, summary judgment must be granted in GPI's favor on Count I.

**C. Count II – Equal Pay Claims**

GPI contends that summary judgment is proper on the equal pay claims because no evidence supports that West had been paid at a rate less than his female comparators. ECF No. 31-1 at 7. The Equal Pay Act and its Maryland statutory counterpart, Md. Code Ann., Lab. & Empl. §§ 3–301 *et seq.*, mirror one another, and thus the claims are analyzed together. *See Cohens v. Md. Dep't of Hum. Res.*, 933 F. Supp. 2d 735, 745 (D. Md. 2013) (quoting *Glunt v. GES Exposition Servs., Inc.*, 123 F. Supp. 2d 847, 861–62 (D. Md. 2000)). Both statutes prohibit discrimination "on the basis of sex by paying wages to employees . . . at a rate less than the rate at which he pays wages to employees of the opposite sex." 29 U.S.C. § 206(d)(1); *accord* Md. Code. Ann., Lab & Empl. § 3-304(b) ("An employer may not discriminate between employees in any occupation by . . . paying a wage to employees at a rate less than the rate paid to other employees if the employees work in the same establishment and perform work of comparable character or work on the same operation, in the same business, or of the same type and the pay difference is

based on the race, religious beliefs, *sex*, gender identity, or sexual orientation of the employees." (emphasis added)). Accordingly, to survive a challenge, some evidence must reflect that West had been paid at a *rate* less than the rate paid to a similarly situated female employee. *Sempowich v. Tactile Sys. Tech., Inc.*, 19 F.4th 643, 655 (4th Cir. 2021) ("[T]he statute and the EEOC's regulations make clear that an employer violates the Equal Pay Act if it pays female employees at a rate less than that of similarly situated male employees."). West, in response, obliquely contends that GPI violated the equal pay statutes because it did not pay him "in full" as compared to similarly situated female associates. ECF No. 33 at 2.

When viewing the record most favorably to West, no evidence suggests that his pay *rate* was any different than his female comparator. His identified contemporary, Ashley Nance, may have received a larger total payment, but she also worked more days than West. *See* ECF No. 31-2 ¶¶ 3–12. *Compare* ECF No. 35 at 3, *with id.* at 4. And both were guaranteed the same $3000 pay, calculated at the same daily rate of $96.77. ECF No. 31-2 ¶¶ 10–11.[2] Thus, summary judgment must be granted in GPI's favor on Count II.

**D. Count III – Retaliation & Harassment**

West next combines Title VII retaliation and harassment claims into one count, both premised on phone calls and text messages he received the day after he resigned regarding the return of GPI's company property. *See* ECF No. 2 at 3, 5. Neither claim succeeds.

For one, GPI rightly points out that prior to filing the Complaint, West had not exhausted administrative remedies by filing a formal charge with EEOC. ECF No. 31-1 at 8. Before a plaintiff may file suit under Title VII, he must exhaust administrative remedies by submitting his

---

[2] Nor does evidence of different pay for two other female employees advance the claim. Those employees made more money for the same pay period, but this does not mean GPI paid them at a higher *rate* of pay than the rate at which they paid West. *See* ECF No. 35 at 2 & 5. Indeed, the pay records reflect that each earned commissions on vehicle sales. *See id.*

charge of discrimination to the EEOC. *See* 42 U.S.C. § 2000e-5(f)(1); *see also Chacko v. Patuxent Inst.*, 429 F.3d 505, 509 (4th Cir. 2005) ("An individual cannot bring suit until he has exhausted the administrative process."). The EEOC charge dictates the scope of the claims that the plaintiff may next pursue in his federal lawsuit. *Id.*; *Bryant v. Bell Atlantic Md., Inc.*, 288 F.3d 124, 132 (4th Cir. 2002). As a claims processing rule, exhaustion serves the important purpose of placing the employer on notice of the alleged violations so that the parties may try to resolve the claims out of court. *See Cowgill v. First Data Techs., Inc.*, 41 F.4th 370, 383–84 (4th Cir. 2022). Accordingly, exhaustion remains a necessary precondition to suit. *Fort Bend County v. Davis*, 587 U.S. 541, 551 (2019) (describing the exhaustion requirement as non-jurisdictional but "mandatory").

West, however, failed to file a formal charge before initiating this lawsuit and instead only brought his EEOC claim once this case was well underway. *Compare* ECF No. 31-7, *with* ECF No. 2. Nor does he meaningfully dispute that the claims should be dismissed for lack of exhaustion alone. *See* ECF No. 33 at 4. He makes only an unsupported argument that his claims do not require exhaustion, which simply is not true. *See id.* Dismissal accordingly must follow. *See Chacko*, 429 F.3d at 513.

Alternatively, even if West did exhaust remedies, he has generated no evidence to support either Title VII retaliation or hostile work environment allegations. Taking the retaliation claim first, "Title VII forbids . . . retaliation against an employee for opposing adverse actions that she reasonably suspects to be unlawful under Title VII." *Strothers v. City of Laurel*, 895 F.3d 317, 326–27 (4th Cir. 2018) (citing 42 U.S.C. § 2000e-3). To make a prima facie showing of retaliation, West must generate some evidence that he engaged in activity protected under Title VII, and that the employer took adverse action in response to that protected activity. *See id.* at 327; *see also*

*Burlington N. & Santa Fe Ry Co. v. White*, 548 U.S. 53, 62–63 (2006). An employment action is sufficiently "adverse" if "it might well have 'dissuaded a reasonable worker from'" engaging in protected activity. *Id.* at 68 (quoting *Rochon v. Gonzales*, 438 F.3d 1211, 1219 (D.C. Cir. 2006)); *see also id.* (explaining that Title VII "prohibit[s] employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers" (quoting *Robinson v Shell Oil Co.*, 519 U.S. 337, 346 (1997))). If the showing is made, then "the burden shifts to the employer to show that its purportedly retaliatory action was in fact the result of a legitimate non-retaliatory reason." *Strothers*, 895 F.3d at 328 (quoting *Foster v. Univ. of Md.-E. Shore*, 787 F.3d 243, 250 (4th Cir. 2015)) (citation modified). The employee must then rebut the employer's evidence by demonstrating the proffered reason was pretextual. *Id.*

The retaliation claim fails principally because West did not engage in any activity protected under Title VII. He did not, for example, complain to anyone while employed about discrimination aimed at him or his coworkers. *See* ECF No. 33 at 3. Nor did he file a formal charge of discrimination with the EEOC until well after he initiated this lawsuit. *See* ECF No. 31-7. Rather, the record viewed most favorably to West reflects that at the time he resigned, he informed his supervisor that he was leaving because the dealership was poorly run, making his orientation "stressful and frustrating." ECF No. 35 at 12. Complaining about general mismanagement, however, does not constitute protected Title VII activity. Thus, summary judgment must be granted in GPI's favor.

Similarly, no evidence supports the hostile work environment claim. *See* ECF No. 35 at 13–17. To proceed, West must adduce evidence that not only had he experienced unwelcome conduct imputable to the employer, but that the conduct was aimed at a protected characteristic and was "sufficiently severe or pervasive to alter the conditions of [his] employment." *Spriggs v.*

*Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001); *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 299 (4th Cir. 2015). West contends that GPI staff "harassed" him by calling him the following day demanding return of property. ECF No. 2 at 3. But the claimed harassment here had nothing to do with West's gender. Nor did it occur while West worked at GPI. Accordingly, summary judgment must be granted in GPI's favor on Count III.

### E. Count IV – "Organization Failure and Management Dysfunction"

Lastly, Count IV need not detain the Court for long. West complains about GPI's poor management as "evidenced by departures of key management figures" that led to West's resignation. ECF No. 2 at 5. But a poorly run business alone is not actionable in law. Even when viewing the claim most charitably to West, no legally cognizable cause of action exists. Thus, this claim, too, cannot proceed.

## III. Conclusion

For the foregoing reasons, the Court grants GPI's motion for summary judgment on all counts. Likewise, because West has failed to adduce any evidence to support any claim, his cross motion is denied.

A separate order follows.

8/17/2026
Date

/s/
PAULA XINIS
United States District Judge